## Affidavit in Support of an Arrest Warrant

I, Tom Boyce, Criminal Investigator for the Southern Ute Police Department, the Affiant herein, upon being duly sworn, state the following is true according to my knowledge and belief:

Your Affiant is a Criminal Investigator with the Southern Ute Police Department and has been conducting criminal investigations since September of 2018 for the Southern Ute Police Department. Prior to September 2018, your Affiant has experienced 25 years in law enforcement to include duties as a Patrol officer, thirteen years as a Detective/Investigator, and police administration. Your Affiant has completed a basic law enforcement academy and in addition, numerous Patrol level and Criminal Investigation level training courses. This training background also includes several trainings in the investigation of Domestic Violence incidents. In addition, I have received training which includes Jurisdiction in Indian Country regarding Title 18 United States Code crimes.

Your Affiant has probable cause to believe that Brian Larry, Date of Birth 06/14/82, a Native American Male, Navajo census number 321706, has committed a violation of 18 U.S.C. Sections 113 (a)(8) and 1153, Assault on an intimate partner by strangulation in Indian Country against an individual with the initials O.B., OB, a Native American female and intimate partner of Brian Larry. The location where the crime was committed is 1115 Hwy 151, Ignacio, CO. 81137. This location is on tribal land, located within the exterior boundaries of the Southern Ute Indian Reservation, State and District of Colorado, and is considered "Indian Country" under federal law.

**The Facts giving rise to such belief are as follows:**

The following is a synopsis of the events known up to this point in the investigation and is derived from fellow officer's statements, police reports, body camera footage, dispatch logs, and interviews. As the purpose of this affidavit is to establish probable cause for the offense listed above, not all information known to your Affiant is set forth below:

1. The following incident took place at, 1115 Hwy. 151, Ignacio, CO. 81122. This location is Southern Ute Tribal Land and is within the Exterior Boundaries of the Southern Ute Indian Reservation, in an area designated as Indian Country, in the State and District of Colorado.

2. On October 12, 2019 at approximately 1:17 a.m. Officer K. Maulsby along with Officer M. Mitchell and Sgt. S. Clance responded to 1115 Hwy. 151 on report of a disturbance in progress between a male and female. The male and female involved in the disturbance were later identified by law enforcement as Brian Larry, date of Birth 06/14/82, Navajo Census # 321906, and O.B., date of Birth 08/17/79, a Southern Ute Tribal member, Census # 1175.

3. Upon arrival Officer Maulsby spoke with O.B. who was seated in a vehicle outside the residence. During their conversations, O.B. told Officer Maulsby that she and Larry were recently divorced and that they have three children together. O.B. told Officer Maulsby there had been an argument and physical altercation between her and Larry. O.B. also disclosed to Officer Maulsby that Larry had "strangled her O.B. on the floor". O.B. stated she did not pass out but had seen black spots. O.B. further explained to Officer Maulsby that she had hit Larry with one of Larry's trophies in self-defense. Officer Maulsby observed that O.B. appeared emotional and cried off and on during their conversation.

4. After speaking to O.B., Officer Maulsby entered the home and encountered Larry. Officer Maulsby observed multiple scratch marks on Larry's chest, left shoulder, and back. Officer Maulsby also saw glitter apparently from a broken trophy, on the top of Larry's head. Larry told Officer Maulsby that O.B. started an argument with him. Larry explained to Officer Maulsby that he wasn't sure why the argument had begun, and that O.B. was complaining about things in the past and wasn't making sense. Larry told Officer Maulsby that O.B. began to hit Larry with closed fists. Larry told Officer Maulsby that he used his cell phone and began recording the fight between O.B. and himself. Larry said to Officer Maulsby that O.B. then grabbed the trophy and hit him multiple times all over his body with it, breaking the trophy. Larry pointed out a kitchen knife laying on a counter to law enforcement and claimed O.B. had started to come at him with the knife. Larry explained to the officers he "attempted to restrain her, by pushing her away".

5. Based on the visible injuries to Larry and the evidence observed inside the house, Officer Maulsby and other officers arrested O.B. for multiple tribal charges related to domestic violence.

6. Your affiant was notified about this case by Southern Ute Chief of Police Coriz on 10/14/2019.Chief Coriz explained that there were injuries to O.B. which had not observed by or noticed by the arresting officers. I then contacted Victim Services Coordinator Lisa Manzanares, as I was told she had additional information. Manzanares told me that O.B. had extensive bruising and injury to her body including her throat area and had a very raspy voice when speaking. Manzanares told me O.B. was being released from the Tribal Jail. I asked Manzanares to immediately attempt to get O.B. to the Tribal Clinic for a medical exam. I also asked Manzanares to set up and interview with O.B. for the following morning.

7. On 10/15/19 I met with O.B. and Lisa Manzanares at my office. I began an interview with O.B. at approximately 9:20 a.m. I noted O.B. was wearing a coat when she came in. I did advise O.B. the interview was being recording and she stated that was ok. Your Affiant was able to see bruising under O.B.'s left eye, her left cheek and jaw line appeared swollen compared to the right side, and when speaking, O.B. did have a raspy voice and appeared to have problems when talking. Because O.B. had been placed under arrest on this case and had been incarcerated, I asked O.B. if she had been assigned and or obtained an attorney. O.B. told your Affiant she had not. Your Affiant then explaining the above, told O.B. that I was going to advise O.B. of her rights. Your Affiant used a departmental Advisement form, and allowing O.B. to read along with me, did advise O.B. of her rights. O.B. stated she understood her rights and waived her rights agreeing to talk to me.

8. During the interview, O.B. explained that she and Larry had recently divorced. O.B. had been living with the children at another family members home. O.B. told me she and Larry had been communicating and decided that Larry would soon move out so that she and the children could move back into the residence. O.B. stated she had returned to the house for this purpose on the evening of 10/11/19.

9. O.B. told your Affiant she and Larry had put the children to bed at around 9:00 pm. O.B. stated Larry was drinking beer and she was drinking wine and they were just sitting around chatting. O.B. said Larry received a phone call from a friend and initially sat on the couch talking on the phone. O.B. stated Larry eventually got up and left the room continuing to talk on the phone. O.B. stated she could hear Larry talking and saying negative things about her to his friend on the phone. O.B. stated once Larry ended the call and came back into the living room, she confronted him about the contents of the conversation she had overheard.

10. At some point during the argument, O.B. turned to walk away from Larry. O.B. explained that at that point, Larry grabbed her by her throat from behind and slammed her to the floor. O.B. stated Larry got on top of her with his knees on her chest and yelled at her while strangling her. O.B. stated she didn't pass out but was starting to see spots in her vision and began fighting back. O.B. said she got out from beneath Larry and grabbed the closest item to her to fight back with, a large trophy. O.B. described being afraid. After grabbing the trophy, O.B. explained that she began hitting and striking at Larry in self-defense.

11. Your affiant asked O.B. about the allegation made by Larry, that O.B. had picked up a knife and advanced toward him. O.B. told your affiant she had never picked up or used a knife. Note: your Affiant reviewed the bodycam footage of the officer's present at the residence that night, which included a recording of the short video shown by Larry to the officers allegedly showing O. B. assaulting him with the trophy; your affiant did not observe any evidence of O.B. holding a knife

12. Your affiant questioned O.B. regarding the video Larry had taken during the altercation. When asked, O.B. said he began videotaping after Larry had thrown her down and strangling her.

13. Your affiant ended the interview at approximately 10:55 a.m. after being reminded that O.B. was to be in Durango for an appointment with a throat specialist. Your affiant requested O.B. to return here at 1:00 pm to allow me to photograph her injuries. O.B. agreed.

14. At 1:00 pm, O.B. returned to my office and we continued our interview. At this time, I asked what O.B.'s appointment had disclosed. O.B. stated the doctor had scoped her throat and had stated there were injuries to her throat. The injuries included evidence of bruising inside her throat. O.B. said the doctor indicated she would be ok and that she would be taking a steroid to reduce inflammation.

15. Your affiant photographed O.B.. O. B. removed the over coat she was wearing at which time your Affiant noted multiple bruises on both arms, O.B.'s face, neck, chest, and right thigh. Your

    Affiant took photos to include overview photographs, then repeated these photographs using scale.

16. Based on your Affiant's training and experience the observed injuries and wounds were consistent with the manner and means described by O.B. Your affiant also believes based on training and experience, that the extent, size and number of bruises observed indicate a violent assault well beyond someone reasonably restraining another person as stated by Larry to officers on scene.

17. Your Affiant submits that based on the facts outlined in this affidavit, there is probable cause to believe that Brian Larry, a Navajo Native American Male, date of birth 06/14/82, 6'00, 220, brown eyes, black hair, has committed the crime of 18 U.S.C.113 (a)(8), 1153, Assault on an Intimate Partner by Strangulation in Indian Country, against O.B. a Native American Female and intimate partner of Brian Larry. The assault occurred at 1115 Hwy. 151, which is within the exterior boundaries of the Southern Ute Indian Reservation, State and District of Colorado, Indian Country.

\_\_\_/s/ Tom Boyce_____

Tom Boyce, Criminal Investigator

Southern Ute Police Department

Subscribed and sworn before me this\_18th\_\_\_\_\_day of\_\_October\_, 2019

_____

Honorable Gordon P. Gallagher

U.S. District Court Magistrate Judge